[No. 51961-1-I.   Division One.   April 12, 2004.]

THE STATE OF WASHINGTON, *Respondent*, v. SHAUN PAUL TANBERG, *Appellant*.

*Thomas M. Kummerow* (of *Washington Appellate Project*), for appellant.

*Janice E. Ellis, Prosecuting Attorney,* and *Seth A. Fine, Deputy,* for respondent.

COLEMAN, J. — Double jeopardy protects persons from multiple punishments for the same crime. The key consideration in analyzing a double jeopardy claim is to determine

what punishment the legislature intended. In making this determination, courts employ the same evidence test. Under that test, if the two crimes each have an essential element that is not an element of the other crime, the crimes are not the same in law. Absent clear contrary intent by the legislature, imposing punishments for both crimes does not violate double jeopardy. Here, the appellant argues that his sentence violated double jeopardy because the same conduct supported both convictions. We affirm both convictions and sentences because (1) first degree robbery and second degree assault are not the same in law and (2) there is no clear showing of legislative intent to preclude punishment for both crimes. Additionally, we hold that the trial court did not err in refusing to grant a mistrial based on the prosecutor's comments at closing argument because any resulting prejudice could have been corrected with a proper instruction.

## FACTS

CR was attacked by three men as she walked to her bus stop late one evening. Witnesses testified that two African-American men and one Caucasian man took her purse and physically attacked her. The witnesses identified Shaun Paul Tanberg as the Caucasian attacker. Tanberg was charged with first degree robbery by inflicting bodily injury and second degree assault.

At trial, Tanberg denied participating in the robbery and assault. He presented witnesses who testified that he was somewhere else at the time of the attack and that he did not have any African-American friends. Tanberg objected to comments made by the prosecutor during closing argument and moved for a mistrial. The trial court denied the motion for a mistrial, but instructed the prosecutor to restrict her comments to the evidence. At the close of arguments, defense counsel again moved for a mistrial based on the prosecutor's statements. The court denied the motion.

Tanberg was convicted of both first degree robbery and second degree assault, and the trial court sentenced

Tanberg on both counts. Tanberg filed a timely notice of appeal, claiming that the trial court erred in denying his motion for a mistrial based on prosecutorial misconduct and that his sentence violated double jeopardy.

## DISCUSSION

The first issue we address is whether imposing sentences for both first degree robbery and second degree assault violated double jeopardy. Under the fifth amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, no person shall "be subject for the same offense to be twice put in jeopardy of life or limb . . . ." Tanberg did not raise the issue of double jeopardy below, but as a "manifest error affecting his constitutional right to be free from double jeopardy," he may raise it for the first time on appeal. *State v. Turner*, 102 Wn. App. 202, 206, 6 P.3d 1226 (2000). The key consideration in a double jeopardy analysis is whether the legislature intended separate punishments for the crimes. When there is not an express statement of legislative intent, courts must employ rules of statutory construction in order to determine legislative intent. Here, there is not an express statement of legislative intent, so we turn to tools of statutory construction.

Courts use the same evidence test to determine whether the legislature intended multiple punishments. *State v. Calle*, 125 Wn.2d 769, 780, 888 P.2d 155 (1995). Under this test, the court must determine whether the crimes are the same in law and in fact:

> In order to be the "same offense" for purposes of double jeopardy the offenses must be the same in law and in fact. If there is an element in each offense which is not included in the other, and proof of one offense would not necessarily also prove the other, the offenses are not constitutionally the same and the double jeopardy clause does not prevent convictions for both offenses.

*State v. Vladovic*, 99 Wn.2d 413, 423, 662 P.2d 853 (1983).

Here, the State charged Tanberg with first degree robbery and second degree assault. Robbery, as defined under RCW 9A.56.190, involves a taking of personal property:

> A person commits robbery when he unlawfully takes personal property from the person of another or in his presence against his will by the use or threatened use of immediate force, violence, or fear of injury to that person or his property or the person or property of anyone. . . .

Robbery in the first degree occurs when, "[i]n the commission of a robbery or in immediate flight therefrom, he or she: . . . [i]nflicts bodily injury . . . ." RCW 9A.56.200(1)(a)-(iii). Bodily injury is defined as "physical pain or injury, illness, or an impairment of physical condition . . . ." RCW 9A.04.110(4)(a).

Second degree assault is defined under RCW 9A.36.021(1)-(a): "A person is guilty of assault in the second degree if he or she . . . [i]ntentionally assaults another and thereby recklessly inflicts substantial bodily harm . . . ." Substantial bodily harm is defined as "bodily injury which involves a temporary but substantial disfigurement, or which causes a temporary but substantial loss or impairment of the function of any bodily part or organ, or which causes a fracture of any bodily part . . . ." RCW 9A.04.110(4)(b).

An essential element of robbery is the taking of property belonging to another person. This is not an element of assault. Intent to assault is an essential element of second degree assault. Intent to assault is not an element of robbery. The crimes, therefore, are not the same in law. Tanberg argues that the crimes, *as charged in his case*, are the same because the State relied on the same evidence to prove both charges. The issue is not, however, whether the same evidence is required to prove both crimes under the particular facts of the case, but whether proof of the same elements is necessarily required in all cases to establish the crimes.

At oral argument, counsel for Tanberg urged the court to consider the United State Supreme Court's decision in

*United States v. Dixon*, 509 U.S. 688, 113 S. Ct. 2849, 125 L. Ed. 2d 556 (1993). Tanberg cited *Dixon* in his briefs, but did not provide analysis. The holding in *Dixon*, however, does not support Tanberg's argument that his convictions violate double jeopardy. As a condition of release, Dixon was specifically ordered not to commit "any criminal offense." Dixon was later arrested and charged with a drug offense. Based upon the same conduct, he was also charged with criminal contempt for committing a criminal offense in violation of the court's order. Dixon was convicted of both the underlying drug charge and criminal contempt for committing the crime. Under these circumstances, convictions for both the underlying crime and contempt violated double jeopardy because the same elements would necessarily be required to prove the underlying crime and contempt based on that crime.

Tanberg's case, as *Dixon* illustrates, is different. Foster, another respondent in *Dixon*, was subject to a protective order that included the provision not to " 'molest, assault, or in any manner threaten or physically abuse' " his wife. *Dixon*, 509 U.S. at 700. Foster was convicted of violating that provision of the protective order and of assault with the intent to kill for the same conduct. In his opinion, Justice Scalia concluded that because each crime contained different elements and "[a]pplying the *Blockburger* [v. *United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932)] elements test, the result is clear: These crimes were different offenses, and the subsequent prosecution did not violate the Double Jeopardy Clause." *Dixon*, 509 U.S. at 701-02. The same is true here, where second degree assault requires intent to assault, which is not an element of first degree robbery and first degree robbery requires a taking of property, which is not an element of second degree assault.

Tanberg also relies on *State v. Springfield*, 28 Wn. App. 446, 624 P.2d 208 (1981) and *State v. Bresolin*, 13 Wn. App. 386, 534 P.2d 1394 (1975), where the courts held that convictions for second degree assault and first degree robbery violated double jeopardy. The State urges us to hold

that these cases are no longer applicable because *Calle* overruled them. Tanberg, on the other hand, argues that the holdings in *Springfield* and *Bresolin* are still applicable and cites Division Three's reliance on those holdings in *State v. Zumwalt*, 119 Wn. App. 126, 132, 82 P.3d 672 (2003).

*Springfield* and *Bresolin* purport to employ the same evidence test but, in fact, either employ the same conduct test or misapply the same evidence test. In *Springfield*, the court stated, "Where there is no cessation of the infliction of injury, there are not separate acts of violence which would support conviction of both robbery and assault." *Springfield*, 28 Wn. App. at 451. Additionally, in *Bresolin*, the court stated, "only one punishment [is] appropriate for a single criminal act" and "[u]nder the evidence in this case, the assaults inflicted were not separate and distinct from the force required for the robbery." *Bresolin*, 13 Wn. App. at 394. While the courts in *Springfield* and *Bresolin* stated that they were applying the same evidence test, the analysis in both cases focused on the conduct of the defendants and the evidence as presented in those specific cases. In both *Springfield* and *Bresolin*, a proper application of the same evidence test would show that multiple punishments did not violate double jeopardy. Because the courts did not correctly apply the same evidence test, the holdings in *Springfield* and *Bresolin* have been superseded by the more recent holdings.

In contrast, *State v. Cole*, 117 Wn. App. 870, 73 P.3d 411 (2003), correctly applied the same evidence test. In that case, Cole attempted to take a wallet from the victim. When the first attempt was unsuccessful, Cole cut the victim's hands with a knife and put the knife to the victim's throat while threatening him. Cole was convicted of attempted first degree robbery and second degree assault. The use of the knife was the same circumstance used to elevate both the attempted robbery and assault charges. The court held that the crimes included different elements and that there was no clear indication that the legislature intended to disallow punishment for both crimes.

Therefore, under a correct application of the same evidence test, first degree robbery and second degree assault do not constitute the same offense for double jeopardy purposes. This does not end the analysis however.

The results of the same evidence test are "not . . . controlling where there is a clear indication of contrary legislative intent." *Calle*, 125 Wn.2d at 778. If the crimes are not the same in law, however, "there is a strong presumption that the legislature intended separate punishment for each offense, even if they are committed by a single act." *Cole*, 117 Wn. App. at 875. Whether the legislature intended separate punishments for both crimes is not a case-by-case determination based on the facts of each case. Rather, the inquiry is whether the legislature in enacting the statutes intended separate punishments.

One indicator of legislative intent is the evil that the crimes address. Here, "[t]he assault and robbery statutes do not address identical evils." *Cole*, 117 Wn. App. at 877. The assault statute addresses assaultive behavior, while the robbery statute " 'serves to protect individuals from loss of property and threat of violence to their persons.' " *Cole*, 117 Wn. App. at 877 (quoting *State v. Vermillion*, 112 Wn. App. 844, 861-62, 51 P.3d 188 (2002), *review denied*, 148 Wn.2d 1022 (2003)).

Another tool of statutory construction used to determine legislative intent is the merger doctrine. *Vladovic*, 99 Wn.2d at 419 n.2. Tanberg argues that the merger doctrine applies to first degree robbery and second degree assault and, therefore, multiple punishments are not appropriate. Tanberg relies on a recent Division Three case that held that convictions for second degree assault and first degree robbery merge. In *Zumwalt*, Division Three correctly articulated the merger test: "If, in order to prove a particular degree of a crime, the State must prove the elements of that crime and also that the defendant committed an act that is defined as a separate crime elsewhere in the criminal statutes, the second crime merges with the first." *Zumwalt*, 119 Wn. App. at 131.

The court then stated, citing RCW 9A.56.200(1)(a)(iii): "To prove first degree robbery, the State must prove the elements of robbery, plus bodily injury constituting assault." *Zumwalt*, 119 Wn. App. at 131. This statement, however, is incorrect. Assault in the second degree requires that the defendant act with the *intent* to cause the harm. Intent to injure is not required for first degree robbery. Additionally, the injury in second degree assault must be "substantial bodily harm." For a first degree robbery there must only be "bodily injury."[1]

Apparently relying on the incorrect assertion that an assault is required to prove first degree robbery by inflicting bodily injury, the court concluded that "if the unlawful force used in the robbery is the same conduct as that comprising the alleged assault, and if the force required for the assault had no separate purpose or effect, the charges merge and double jeopardy precludes separate convictions." *Zumwalt*, 119 Wn. App. at 132. Because the *Zumwalt* court misapplied the merger doctrine, we will not apply its analysis here.

We instead follow *State v. Freeman*, 118 Wn. App. 365, 76 P.3d 732 (2003), which correctly applied the merger doctrine and held that first degree robbery and first degree assault do not merge. In *Freeman*, the court noted:

> [T]he "inflicts bodily injury" means of elevating robbery to that of the first degree does not require proof of an act that is defined as a crime elsewhere in the criminal code, for example, assault, because the infliction of injury need not be intentional to raise the level of robbery to that of the first degree.

*Freeman*, 118 Wn. App. at 376-77. Under this reasoning, second degree assault does not merge into first degree

---

[1] The State gives an example to illustrate the difference: "The defendant tries to take the victim's purse. She holds on to it. The strap breaks. The victim falls to the ground, bruising her knees. The defendant escapes with the purse. This defendant is guilty of first degree robbery, but he is not guilty of second degree assault, because (1) he may not have intended to commit an assault; (2) he may not have been aware of the possibility that the victim might be harmed (so he may not have been reckless with regard to that result); and (3) the injury that the victim suffered did not rise to the level of 'substantial bodily harm.'" Brief of Resp't at 14-15.

robbery because first degree robbery does not require an intentional act.

Because there is not a clear indication that the legislature intended only one punishment for the crimes of first degree robbery and second degree assault, we affirm the trial court's decision and hold that double jeopardy does not preclude convictions for both first degree robbery and second degree assault.

Affirmed.

The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions.

ELLINGTON, A.C.J., and APPELWICK, J., concur.