[No. 4423–4–II.   Division Two.   May 18, 1982.]

THE STATE OF WASHINGTON, *Respondent,* v. TERRY POTTER, *Appellant.*

[black redacted blocks]

*D. H. Clark,* for appellant.

*Richard C. Adamson,* for respondent.

REED, C.J.—Terry Potter appeals from consecutive sentences for reckless driving and reckless endangerment. We affirm the sentence for reckless endangerment and vacate the sentence for reckless driving.

On December 16, 1978, Mason County officers, prompted by what appeared to be excessive speed and a missing taillight, gave chase to defendant's car. After reaching speeds of 90 to 105 miles per hour, defendant's vehicle pulled to a stop at the Deer Creek Store. As the officers drew in behind defendant with all emergency equipment operating and

prepared to exit their vehicle, defendant took to the highway again. There followed a 22–mile chase during which defendant at one point slammed on his brakes in such a fashion as to cause a near collision with his pursuers. The pursuit was punctuated further by the ramming of defendant's vehicle by a police car in an attempt to stop the chase and by defendant's running of a roadblock before being stopped. After an August 1979 jury trial defendant was found guilty of reckless driving, reckless endangerment and possession of marijuana. Consecutive terms of imprisonment were imposed for reckless driving and reckless endangerment. This appeal followed.

At trial an Ocean Shores police officer was permitted, over defendant's objection, to testify that 22 months earlier defendant had been involved in a similar incident in that coastal town. On appeal defendant challenges the admission of details concerning the Ocean Shores episode and the constitutionality of imposing consecutive sentences for reckless driving and reckless endangerment.

█ As to the first issue we find no error. ER 404(b) governs and reads as follows:

> **Other Crimes, Wrongs, or Acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

See also State v. Goebel, 36 Wn.2d 367, 218 P.2d 300 (1950). Here the defense was predicated on the theory that defendant was not aware he was being pursued by police officers and did not intend either to elude them or cause a collision. Evidence of the similar escapade at Ocean Shores was admissible to prove defendant's reckless mental state and the absence of mistake or accident. As shown by the record, the trial court carefully weighed the relevance of the evidence against its prejudicial impact before allowing its admission. See Comment to ER 404(b) and see State v.

*Tharp,* 96 Wn.2d 591, 637 P.2d 961 (1981). We find no abuse of discretion.

The second issue is more troublesome. Defendant argues that, because the State necessarily had to prove reckless driving to prove reckless endangerment, the constitutional prohibition against being twice put in jeopardy precludes the multiple punishment meted out to him in the form of consecutive sentences. U.S. Const. amend. 5 and Const. art. 1, § 9.

■ We will first dispose of the State's contention that defendant's course of conduct can be broken into segments so that he can be found guilty of having violated the reckless driving statute at some particular point in time during the chase and the reckless endangerment statute at another point in time. The United States Supreme Court, in *Brown v. Ohio,* 432 U.S. 161, 169, 53 L. Ed. 2d 187, 97 S. Ct. 2221 (1977), rejected this rationale by stating:

> The Double Jeopardy Clause is not such a fragile guarantee that prosecutors can avoid its limitations by the simple expedient of dividing a single crime into a series of temporal or spatial units.

■ The double jeopardy clause of the Fifth Amendment serves three primary purposes. First, it protects against a subsequent prosecution for the same offense after an acquittal. Second, it protects against a subsequent prosecution for the same offense after a conviction. Third, it protects against multiple punishments for the same offense, imposed at a single criminal proceeding. *North Carolina v. Pearce,* 395 U.S. 711, 23 L. Ed. 2d 656, 89 S. Ct. 2072 (1969); *accord, State v. Roybal,* 82 Wn.2d 577, 512 P.2d 718 (1973). The recognized test for determining whether two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment was enunciated in *Blockburger v. United States,* 284 U.S. 299, 76 L. Ed. 306, 52 S. Ct. 180 (1932), wherein the court stated:

> [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be

applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

*Blockburger,* 284 U.S. at 304. *See also Albernaz v. United States,* 450 U.S. 333, 67 L. Ed. 2d 275, 101 S. Ct. 1137 (1981); *Whalen v. United States,* 445 U.S. 684, 63 L. Ed. 2d 715, 100 S. Ct. 1432 (1980); *Brown v. Ohio, supra; Iannelli v. United States,* 420 U.S. 770, 43 L. Ed. 2d 616, 95 S. Ct. 1284 (1975).

In the present case we are asked to decide whether reckless endangerment and reckless driving are the *same offense* when punishment for both crimes is imposed in the course of a single criminal proceeding. The role of the double jeopardy clause in this context is limited to a determination of whether the punishment meted out is consistent with legislative intent. Legislative intent must be looked to because

the Fifth Amendment double jeopardy guarantee serves principally as a restraint on courts and prosecutors. The legislature remains free under the Double Jeopardy Clause to define crimes and fix punishments; but once the legislature has acted courts may not impose more than one punishment for the same offense and prosecutors ordinarily may not attempt to secure that punishment in more than one trial.

. . . [Thus,] [w]here consecutive sentences are imposed at a single criminal trial, the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense.

(Footnote and citations omitted.) *Brown,* 432 U.S. at 165. *See also Albernaz,* 450 U.S. at 344. Thus, the *Blockburger* test in this context is employed simply as a rule of statutory construction.

We have compared the statutory elements of reckless driving and reckless endangerment utilizing the *Blockburger* test. In doing so, we note that reckless endangerment has a general conduct element while reckless driving can

arise only out of the operation of a vehicle. If we compare these two elements without reference to what actually occurred, it is apparent that reckless endangerment can be committed without committing reckless driving. If, however, the statutory elements are compared in light of what did in fact occur, we observe that proof of reckless endangerment through use of an automobile will *always* establish reckless driving.´ We have reservations concerning the efficacy of the *Blockburger* test when the result turns on such subtle distinctions. This apprehension is heightened by our observation that reckless driving is an offense defined by the motor vehicle code whereas reckless endangerment is proscribed by the penal code. We do not mean to suggest that the *Blockburger* test has no application to offenses found in separate codes; rather, we believe that in such cases it should be utilized with extra care. As one commentator noted,

> much of the difficulty [in the multiple punishment context] was created by the tremendous increase in the number of statutory crimes which has occurred, with attendant overlapping, duplication and repeal by implication.

Comment, *Statutory Implementation of Double Jeopardy Clauses: New Life for a Moribund Constitutional Guarantee,* 65 Yale L.J. 339, 363 (1956).

Although criticized,[1] the *Blockburger* test is a time—honored tool which we are not inclined lightly to abandon. In this particular context, however, we do not have sufficient confidence in its fitness for discerning legislative intent. Where the legislative will is in doubt, as it is here, we believe that doubt should be resolved against the imposition of multiple punishments.[2] This conclusion is consis-

---

[1]*See, e.g.,* Comment, *Twice in Jeopardy,* 75 Yale L. Rev. 262, 273–74 (1965).

[2]At least one commentator has suggested that the double jeopardy clause operates, in this context, as a rebuttable presumption against multiple punishment. Westen, *The Three Faces of Double Jeopardy: Reflections on Government Appeals of Criminal Sentences,* 78 Mich. L. Rev. 1001, 1026–30 (1980). We believe this view has merit. It has the virtue of resolving cases where legislative

tent with the general principle that penal statutes should be strictly construed, *see State v. Lundell,* 7 Wn. App. 779, 503 P.2d 774 (1972), and with the rule of lenity, *see State v. Arndt,* 87 Wn.2d 374, 385, 553 P.2d 1328 (1976).

Accordingly, the judgment and sentence for reckless endangerment are affirmed; the sentence for reckless driving is vacated.

PETRIE and PETRICH, JJ., concur.

intent is unclear, even after application of the *Blockburger* test. Further, it is compatible with recent case law. *See, e.g., Whalen v. United States, supra; Iannelli v. United States, supra.*